BENJAMIN F. HAM ET AL. *v.* THE TOLEDO, WABASH AND WESTERN RAILWAY COMPANY.

'The writ of mandamus will not be allowed to compel a corporation to issue its bonds to one of its creditors in order to obtain the benefit of a mortgage security, where the right of the creditor to such security is doubtful and the property sought to be affected has passed into the hands of third parties as purchasers. The remedy in such case should be by a suit brought in equity against the parties whose interest it is sought to affect.

MANDAMUS.

*Henry S. Bennett*, with whom was *Wm. Baker*, for petitioners:

I. The execution and delivery by the company of the consolidated mortgage, "Exhibit A," to the trustees created a trust for the benefit of the petitioners and the other creditors and bondholders named therein. The right and equitable title to the bonds secured by that mortgage became then secured to and vested in the petitioners, and they can not be divested of that title nor deprived of that right by any act or omission of the corporation or of the trustees.

The directors and trustees undertook and became merely instruments to fill out and execute the requisite forms and perform the necessary ministerial duties to perfect the title to those bonds in the petitioners, and to carry out the details of the trust. It is a maxim in equity that what ought

to be done is assumed as actually to have been done. Therefore, by that instrument, the title to and the right to receive those consolidated bonds vested in the petitioners, and nothing remained undone to render that right available and to perfect that title except the mere ministerial duties of signing, indorsing, and delivering the bonds. 1 Johns. Ch. 57, Sheppard, J.; 4 Cruise, sec. 52; 1 Johns. Ch. 255, Ch. Kent's opinion.

II. This duty being specific, well defined, and purely ministerial, and as it involved the exercise of no discretion or investigation, and as the relators are the persons whose official position clothes them with the power and whose acceptance of the trust imposes on them the performance of the duty, mandamus is the proper remedy in case they fail to perform that duty. *Citizens' Bank of Steubenville* v. *Wright,* 6 Ohio St. 318; *Queen* v. *Southampton,* 1 Best & Smith, 5; *People* v. *Shearer,* 30 Cal. 645; *N. W. N. C. R. Co.* v. *Jenkins,* 65 N. C. 173.

III. A clear vested legal right is shown on the part of the petitioners, involving a corresponding official duty on the part of the directors and trustees to make that legal right available, and it is clear that mandamus is the only adequate and specific remedy. In fact, the petitioners have no other remedy or relief. Without its aid there will be a total failure of justice. *People* v. *State Treasurer,* 24 Mich. 468, 474; *People* v. *Mayor N. Y.,* 12 Wend. 395; *People* v. *Loucks,* 28 Cal. 68; *People* v. *Common Council N. Y.,* 45 Barb. 473; *People* v. *Collins,* 7 Johns. 549.

IV. It is not for the directors to say whether their duty in this respect shall or shall not be performed. The trust has been created and the right has vested. They are merely called on to act in a ministerial capacity, and the aid of mandamus is sought to spur them to the performance of that duty and the discharge of that trust. *Common Council Albany,* 3 Con. 358; *Common Council N. Y.,* 45 Barb. 473; *Humboldt Co.* v. *Churchill,* 6 Nev. 30.

John W. Osborn and —— Crawford, for defendant, made oral argument.

WHITE, J.    The application is made by Benjamin F. Ham *et al.*, holders of certain bonds issued by the Toledo and Wabash Railroad Company, and known as equipment bonds, for a writ of mandamus to compel the Toledo, Wabash, and Western Railway Company to issue in exchange for such bonds a like amount of the class of bonds known as consolidated bonds, which were intended to be secured by a mortgage known as the consolidated mortgage, bearing date February 1, 1867.

The facts, so far as they are necessary to an understanding of the decision, are in substance as follows:

The present defendant, the Toledo, Wabash and Western Railway Company, is a corporation created under the laws of the States of Ohio, Indiana, and Illinois, respectively, for the purpose of maintaining and operating a line of railroad from Toledo, in the State of Ohio, to Quincy, East St. Louis, and other points in the State of Illinois.

It became such corporation by virtue of a consolidation in the year 1869, between a corporation having the same name, existing prior to that date, and the Decatur and East St. Louis Railway Company, a corporation of Illinois.

The Toledo, Wabash and Western Railway Company, existing prior to the consolidation of 1869, was formed by the consolidation of various other incorporated companies, each of which, up to the time of consolidation, owned parts of the line of railroad, which, after the consolidation, became the property of and was operated by the consolidated company.

At the time of the consolidation, each of the companies entering into it had a large outstanding indebtedness evidenced by bonds and otherwise, part of which was secured by mortgage and other liens on its property.

One of the companies was the Toledo and Wabash Railroad Company, which issued the equipment bonds now held by the relators.    These bonds were issued November 1, 1863, and become due May 1, 1883, and were unsecured.

Before the consolidation of 1869, viz., on February 1, 1867, the Toledo, Wabash and Western Railway Company,

then existing, executed to Isaac Knox and James R. Jesup the mortgage called the consolidated mortgage.

The scheme contemplated by the execution of this mortgage was the funding into a single mortgage indebtedness of the bonds of the several consolidating companies, whether such bonds were secured by mortgage or not. The various classes of bonds are specified in the recitals of the mortgage, and among them are the equipment bonds above referred to.

It is also recited in the mortgage that it has been deemed for the interest of the mortgagor " as well as for the benefit of the holders of all said various classes of bonds, that the whole of the same should be consolidated into one and the same mortgage debt *upon equitable principles.*"

The mortgage also contained the following recital :

"AND WHEREAS, For the purposes aforesaid, and for the objects herein stated, the said company, parties of the first part, has resolved to make and issue its bonds to the extent of fifteen millions of dollars, and to secure the payment of the same by a mortgage upon its entire property; and that of the amount of said bonds so to be made and issued, there should be retained thirteen millions three hundred thousand dollars to retire, in such manner and upon such terms as the directors of said company may from time to time prescribe, a like amount of the bonds of the various companies hereinabove enumerated and described and representing the aforesaid funded debt; and that the balance of said bonds, to-wit, one million seven hundred thousand dollars thereof, should be used to provide the said additional equipment and other improvements hereinabove mentioned, and for such additional purposes as the said directors may deem advisable ; and that all of said bonds should be for the sum of one thousand dollars each, except two hundred, which should be for the sum of five thousand dollars each, and that all should bear date on the 1st of February, A. D. 1867, and become due and payable in forty years from their date, with interest at the rate of seven per cent. per annum, payable quarterly on the first days of May, August,

November, and February, in each year, in the city of New York, and to be all convertible into the common stock of said company at par, at the option of the holder, at any time within ten years from their date."

Upon this recital the relators found their alleged right to demand in exchange for their equipment bonds the bonds provided for by this mortgage.

Two millions seven hundred thousand dollars of bonds were issued under this mortgage by the mortgagor company; but none of the bonds so issued were used to take up or retire any of the equipment bonds.

After the formation of the present company by the consolidation in 1869 of the former Toledo, Wabash and Western Railway Company with the Decatur and East St. Louis Railway Company, namely, on the 1st of February, 1873, the present company executed its own bonds, commonly called gold bonds, to the amount of five millions of dollars, and a mortgage to secure the same upon all its property of every description.

The bonds last named are the only bonds issued by the defendant.

Prior to the consolidation in 1869 no demand was made of the company by the holders of the equipment bonds to exchange them for the bonds secured by the consolidated mortgage.

Interest was regularly paid on the equipment bonds up to November, 1864, at which time the payment of interest ceased.

On the 29th of June, 1875, demand was first made by the holders of equipment bonds of the officers of the defendant to issue in exchange for such bonds the bonds secured by the consolidated mortgage, which demand was then refused

At that time all the property and assets of the defendant, including its books and unissued bonds, were in the hands of a receiver under proceedings instituted to foreclose the mortgage given by the defendant to secure the payment of the so-called gold bonds.

In December, 1875, a decree was rendered in the suit for the foreclosure of the last-named mortgage against the

defendant, whereby all of the property of the defendant, including that covered by the consolidated mortgage, was ordered to be sold ; and on the 10th of June following the property was, in accordance with the decree, sold to John W. Ellis and others. This sale was confirmed, and a deed ordered to be made to the purchasers before the present proceeding was commenced.

The decree contained the following condition :

"And that the sale of said road, property, equipment, and franchises be made subject to the priority and continuance of said several mortgage liens, and without prejudice to any claim which may be made by the holders of the bonds called the equipment bonds, referred to in the petition, as to which all questions arising are left open."

By this provision any rights the relators may have in the property are reserved to them.

Various grounds are set up by the defendants why the writ asked for by the relators should not be granted.

The principal grounds are, in substance, the change in the organization of the company proposing the scheme contained in the consolidated mortgage, by the consolidation with another company, before any steps were taken either by the company or the holders of the equipment bonds, to carry out the scheme as respects such bonds ; that the holders of such bonds never became parties to the plan proposed, and the great length of time they allowed to elapse before they attempted to have the exchange made. The fact that the scheme proposed was found to be impracticable to accomplish the purposes intended by it, and that it was abandoned before the relators sought to avail themselves of it, even if they could have done so without further action on the part of the company.

That, by reason of the lapse of time and change of circumstances, the equipment bonds have greatly depreciated in value, and are of much less value than bonds secured by the consolidated mortgage ; and that the changes which have taken place in the title of the property by the creation of subsequent incumbrances, and the final sale of the prop-

erty to third parties, who are now in possession, renders it inequitable to enforce the exchange of bonds asked by the relators.

The object sought by the relators is, through this proceeding, to obtain security for their indebtedness against the company by a mortgage on the property now in the hands of the purchasers under the decree of sale.

The unsecured bonds of the company the relators have already, and it is not the object to have such bonds exchanged for others alike unsecured. The company is found destitute of property, and its personal obligations are of no value.

The relief demanded is in the nature of the specific performance of a contract to secure an indebtedness by mortgage on specific property.

In the present instance other incumbrances have intervened and the property to be affected has passed into the hands of third parties as purchasers. These parties are not before the court, and this is a proceeding in which their rights can not be properly litigated.

The present owners of the property are not subject to the direction or control of the defendant. The existence of the contract is denied; and, moreover, if the contract should be established, such a change in the relation of the parties and in the condition of the property is alleged to have occurred as that its enforcement now would be inequitable.

The "manner" and "terms" upon which the original bonds were expected to be exchanged for bonds under the consolidated mortgage seem never to have been prescribed by the directors of the company. This was necessary to be done before the exchange could be made. And it is certainly very questionable whether the whole scheme was not abandoned before the relators acquired any right under it, even as against the company.

But whether the relators have an equity under the mortgage, that may be enforced in a suit properly brought for that purpose against the parties in interest, we are not

called on in this case to determine. It is enough now to say that we are satisfied their application for a mandamus must be denied. *The State ex rel.* v. *Zanesville and Maysville Turnpike Co.,* 16 Ohio St. 308; *United States* v. *The Commissioner,* 5 Wall. 563.

*Writ refused.*